UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

CAROL WARREN )
 )
V. ) NO. 2:10-CV-178
 )
MICHAEL J. ASTRUE, )
Commissioner of Social Security )

REPORT AND RECOMMENDATION

The matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation. Plaintiff's applications for Disability Insurance Benefits and Supplemental Security Income under the Social Security Act were denied following an administrative hearing before an Administrative Law Judge ["ALJ"]. Both the plaintiff and the defendant Commissioner have filed dispositive Motions [Docs. 12 and 16].

The sole function of this Court in making this review is to determine whether the findings of the Secretary are supported by substantial evidence in the record. *McCormick v. Secretary of Health & Human Services*, 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Comm.*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Secretary's decision

must stand if supported by substantial evidence. *Listenbee v. Secretary of Health and Human Services*, 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

Plaintiff's administrative record consists of 936 pages. She alleged disability based upon a number of both physical and mental impairments. Her medical history is summarized in her brief as follows:

> Plaintiff has received treatment at Bristol Regional Counseling Center (Tr. 202-210). Plaintiff underwent psychiatric evaluation on January 23, 1997, due to difficulty with sleep. Plaintiff's diagnoses were noted to include adjustment disorder with mixed emotional features. Plaintiff was very angry, was having marital problems, complained of poor sleep, and reported crying herself to sleep (Tr. 204-205). On April 21, 1997, a Closing Summary notes that Plaintiff was first seen on December 2, 1996, and carried the diagnosis of adjustment disorder with mixed anxiety and depression, with a global assessment of functioning [hereinafter "GAF"] of 58 (Tr. 208-210). Plaintiff's was again discharged on March 17, 2003, at which time her diagnosis was dysthymic disorder, with a GAF of 50 (Tr. 206-207). On September 11, 2001, Plaintiff's diagnoses were anxiety disorder and depressive symptoms (Tr. 203).
>
> Plaintiff received treatment at Bluff City Medical Center from January 28, 2000 through February 10, 2003. Conditions and complaints addressed include insomnia, nervousness, chronic migraine headaches, chronic sinusitis, anxiety, panic disorder, depression, allergies, pelvic/abdominal pain, hyperglycemia, cholelithiasis, amenorrhea, gastritis, hypertension, GERD, dizziness, left carpal tunnel syndrome, tachycardia, back pain radiating down the left leg, psychosocial stressors, chronic pain syndrome, fibrocystic breast disease, lumbar degenerative joint disease, left hip bursitis, bronchitis, left hand numbness, right shoulder bursitis/arthritis, and menstrual cramps (Tr. 211-271).
>
> On March 9, 2000, MRI of the brain showed a few small foci of signal alteration in the white matter (Tr. 269). On March 26, 2001, lumbar spine x-rays showed questionable disc space narrowing at L3-L4 and L4-L5 and thoracic spine x-rays showed mild dextroscoliosis (Tr. 265). On April 24, 2001, MRI of the lumbar spine revealed minimal zygapophyseal joint degenerative changes at L4-5. The conclusion noted that configuration of the lower lumbar spine suggests transitional lumbosacral anatomy, likely accounting for the relative narrowing of the L5-S1 discs (Tr. 262-263). On April 27, 2001, ECG yielded the conclusion of mild thickening of the mitral leaflets, trivial mitral regurgitation, and mild pulmonic regurgitation (Tr. 259). On June 20, 2002, left

hip MRI revealed irregular increased signal intensity within the anterior superior fibers of the left obturator externus muscle, as well as a small collection of fluid just superior to the muscle within the synovial sheath and/or bursa. The findings were noted to be compatible with inflammatory change and/or mild hemorrhage within the muscle itself (Tr. 252).

Plaintiff received treatment at Bristol Regional Medical Center on six occasions from May 12, 2000 through November 8, 2001, due to abdominal and pelvic pain, anxiety, right ankle sprain, rash on hands, migraine headache associated with nausea and lightheadedness, and bronchitis (Tr. 272-282).

Plaintiff received treatment at Northside Hospital on numerous occasions from April 11, 2001 through September 11, 2003, due to rib pain secondary to coughing, migraine headaches, cough, back pain, chest tightness, excessive menstrual bleeding and cramping, right knee pain, viral upper respiratory infection, dermatitis, left ankle injury, and urinary tract infection (Tr. 288-335).

Plaintiff received treatment at Appalachian Medical Center, primarily by Dr. James Morgan and FNP Bobby Reynolds, from April 25, 2003 through October 13, 2003. Treatment was rendered for migraine headaches, tachycardia, anxiety, depression, allergies, asthma, left foot pain, chronic left shoulder pain, right foot sprain, fatigue, grief reaction, left lower extremity pain and swelling, hypercholesterolemia, osteoarthritis, degenerative disc disease, arthralgia, and back pain (Tr. 342-357). On August 18, 2003, bone scan suggested degenerative arthritis in both feet and the right ankle (Tr. 353).

Dr. Aaron Perkins treated Plaintiff from August 11, 2003 through August 25, 2003, due to left foot pain and edema, painful ambulation, and degenerative joint disease of multiple sites (Tr. 358-363).

Plaintiff underwent consultative exam by Dr. Karl W. Konrad on November 25, 2003. In summary, Dr. Konrad noted Plaintiff complaints of problems with her lower back and spine made worse by lifting; both feet bother her when she stands or walks; she suffers from anxiety and panic attacks; physical exam is remarkable for limited range of motion of the lumbar spine; and straight leg raising in supine position on the left causes low back and left hip discomfort. The diagnosis was limited range of motion of lumbar spine with MRI showing minimal degenerative changes (Tr. 364-366).

On December 5, 2003, Plaintiff underwent consultative exam by Rodney A. Sullivan, Ph.D. Presenting problems included panic attacks, feeling out of control, anxiety, depressed mood, crying spells, social withdrawal, anger, suicidal ideation, decreased appetite, sleep disturbance, loss of interest, fatigue, decreased libido, and increased irritability. In summary, Dr. Sullivan noted Plaintiff was experiencing significant levels of depression; her activities of daily living have significantly declined, reducing her independence; she was tearful; her affect and mood were depressed; and she is unable to seek full-time employment, due to anxiety, panic attacks, depression, and suicidal ideations. The diagnoses were major depressive disorder, recurrent, and panic disorder without agoraphobia, with a GAF of 35. Dr. Sullivan opined Plaintiff has limited ability to maintain schedules and attendance; to sustain routine; to interact appropriately with the general public and co-workers; to respond appropriately to changes in the work setting; and to travel unaccompanied in unfamiliar places or use public transportation (Tr. 367-370).

On January 8, 2004, a reviewing state agency physician opined Plaintiff can

3

lift/carry a maximum of 50 pounds occasionally, 25 pounds frequently; can stand/walk for a total of about six hours in an eight-hour workday; can sit for a total of about six hours in an eight-hour workday; can occasionally climb ladder/rope/scaffolds; and should avoid concentrated exposure to vibration (Tr. 371-378).

On February 10, 2004, a reviewing state agency psychologist opined Plaintiff is moderately limited in her ability to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to work in coordination with or proximity to others without being distracted by them; to complete a normal workday and workweek without interruptions from psychologically based symptoms; to perform at a consistent pace without an unreasonable number and length of rest periods; and to interact appropriately with the general public (Tr. 379-396).

Plaintiff underwent laparoscopic cholecystectomy on April 30, 2001, following multiple episodes of abdominal discomfort and an ultrasound demonstrating cholelithiasis. The post-operative diagnoses were cholelithiasis and chronic cholecystitis (Tr. 400-402).

Plaintiff received treatment at Bristol Regional Medical Center on July 1, 2002, due to the diagnosis of peripheral neuropathy (Tr. 398-399).

Plaintiff received treatment and testing at Johnson City Medical Center on numerous occasions from November 15, 2000 through April 7, 2005. Treatment was rendered for pelvic pain, asthma, dyspnea, severe cervical dysplasia, chronic dysmenorrhea, ovarian cyst, left ankle sprain, and irregular heartbeat (Tr. 411-466).

Plaintiff received treatment at Northside Hospital on 12 occasions from September 26, 2003 through February 8, 2006, due to medication reaction, chest pain, high blood pressure irritable bowel syndrome, GERD, exacerbation of chronic left shoulder pain, abdominal pain, sinusitis, migraine headache, left foot and toe contusions, anxiety attacks, panic disorder, periumbilical hernia, gastroenteritis, urinary tract infection, hypokalemia, and neck pain (Tr. 484-613).

Plaintiff continued treatment at Appalachian Medical Center from January 5, 2004 through February 9, 2006. The handwritten notes are difficult to read, but do reflect treatment for migraine headaches, palpitations, asthma, fatigue, dysuria, left shoulder pain, neck pain, osteoarthritis/degenerative disc disease of the low back and neck, irritable bowel syndrome, anxiety, depression, chest pain, abdominal pain, lumbago, dependent edema, diffuse joint tenderness, severe bipolar disorder with psychotic features, severe nightmares, visual and auditory hallucinations, hypertension, chronic obstructive pulmonary disease [hereinafter "COPD"], panic disorder with agoraphobia, posttraumatic stress disorder [hereinafter "PTSD"], chronic bronchitis, mood swings, epigastric pain, and chronic diarrhea (Tr. 614-679).

Plaintiff continued treatment by Dr. Perkins from November 7, 2003 through March 2, 2004, due to bilateral foot pain and edema, painful ambulation, plantar fasciitis, hallux valgus, capsulitis, and limited range of motion in both feet (Tr. 680-686).

Plaintiff underwent her second consultative exam by Dr. Konrad on May 3, 2005. In summary, Dr. Konrad noted Plaintiff complains of problems with her back, her bladder, an irregular heartbeat, and mental illness; physical exam is remarkable for limited range of motion of the lumbar spine; straight leg raising in supine position of the

left causes left lower back and hip pain; and there is borderline hepatomegaly. The diagnoses were borderline hepatomegaly and limited range of motion of the lumbar spine with no degenerative changes of x-ray (Tr. 694-696).

On June 8, 2005, Plaintiff underwent consultative exam by Art Stair, M.A., LPE, and Charlton S. Stanley, Ph.D. Plaintiff reported a moderate degree of anxiety characterized by worry, tension, and sleep disturbances; she reported being mildly agoraphobic and reported mild panic attack symptomatology characterized by difficulty breathing, chest pain, and feelings of losing control; she described a moderate degree of depression characterized by feelings of hopelessness, irritability, fatigue, concentration difficulties, appetite disturbances, and sleep disturbances; and she reported hypomanic episodes characterized by extreme irritability, aimless activity, distractibility, and sleep disturbances. The diagnoses were bipolar II disorder, most recent episode depressed, with psychotic features, moderate; panic disorder with agoraphobia, mild; and borderline personality disorder; with a GAF of 56. The examiners opined Plaintiff's ability to maintain persistence and concentration on tasks for a full workday and workweek is moderately impaired and her social relationships are moderately impaired (Tr. 697-702).

On August 4, 2005, a reviewing state agency psychologist opined Plaintiff is moderately limited in her ability to maintain attention and concentration for extended periods; to complete a normal workday and workweek without interruptions from psychologically based symptoms; to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; and to respond appropriately to changes in the work setting (Tr. 705-721).

Dr. Jeffrey P. Fenyves treated Plaintiff from October 6, 2005 through October 21, 2005, upon referral by FNP Bob Reynolds for evaluation of persistent nausea, diarrhea, and abdominal pain. EGD showed mild gastroduodenitis, possible H-pylori, erythema in the second portion of the duodenum, and reflux esophagitis with a ring. Dr. Fenyves recommended Plaintiff stay on a proton pump inhibitor daily and avoid Goody powders (Tr. 730-741).

On March 13, 2006, Plaintiff underwent consultative exam by Robert S. Spangler, Ed.D., and Kathy Miller M.Ed. Presenting problems included PTSD, bipolar disorder with psychotic features, and panic and anxiety disorder. Plaintiff reported that she was raped three times, the fist at age 12 and twice by age 16; that she has nightmares, depression, verbal and physical aggression, and anger; that she has rapid mood swings and self-mutilates; that she has frequent crying spurts for no reason; that she has auditory and visual hallucinations; and that she has panic symptoms consisting of hyperventilating, passing out, nausea and vomiting, rapid heart rate, and trembling. The diagnoses were bipolar disorder, NOS; PTSD; panic disorder with agoraphobia, mild; and borderline personality disorder, moderate; with a GAF of 60. The examiners opined Plaintiff's auditory and visual hallucinations would impair her concentration; her persistence is limited; her social interaction is limited; and her adaptation is limited (Tr. 742-748).

On March 17, 2006, a reviewing state agency physician opined Plaintiff can lift/carry a maximum of 50 pounds occasionally, 25 pounds frequently; can stand/walk for a total of about six hours in an eight-hour workday; can sit for a total of about six hours in an eight-hour workday; and can frequently climb, balance, stoop, kneel, crouch, and crawl (Tr. 749-754).

5

On March 21, 2006, a reviewing state agency psychologist opined Plaintiff is moderately limited in her ability to maintain attention and concentration for extended periods; to work in coordination with or proximity to others without being distracted by them; to complete a normal workday and workweek without interruptions from psychologically based symptoms; to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; to accept instructions and respond appropriately to criticism from supervisors; to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and to respond appropriately to changes in the work setting (Tr. 755-771).

Plaintiff's academic records show that she dropped out of the eighth grade after failing three times (Tr. 772-776).

On August 9, 2006, FNP Bob Reynolds and Sandra Morgan opined Plaintiff's ability to function is seriously limited, but not precluded (fair) in the areas of follow work rules; relate to coworkers; deal with the public; use judgment with the public; interact with supervisors; deal with work stresses; function independently; maintain attention and concentration; understand, remember, and carry out simple or detailed job instructions; behave in an emotionally stable manner; relate predictably in social situations, and demonstrate reliability. FNP Reynolds and Ms. Morgan further opined Plaintiff's impairment(s) or treatment would cause her to be absent from work more than two days a month (Tr. 777-779).

On February 16, 2007, Plaintiff underwent her second consultative exam by Dr. Stanley and Mr. Stair. Plaintiff reported that she feels up and down; that she gets very tearful and then gets mad and scared; that she sees and hears things that are not there; that she sometimes hides in the corner and doesn't feel safe unless someone is with her; that she has had depression since she was 12 years old; that she was raped a lot when she was young; that she stays angry and wants to fight all the time; that she doesn't like crowds and gets a sick feeling when around them; that she feels like she doesn't care about herself or other people; and that she sometimes gets really upset and starts cutting on herself. Plaintiff's affect was somewhat dysphoric throughout the interview and her attention span and eye contact were fair. Plaintiff reported severe anxiety characterized by worry tension, and sleep disturbance; she reported being somewhat agoraphobia and reported having panic symptoms; she reported a severe degree of lasting depression characterized by feelings of sadness, irritability, fatigue, concentration difficulties, and insomnia; and she reported mild-to-moderate hypomanic symptoms characterized by sleep disturbances, appetite disturbance, and racing thoughts. The diagnoses were cyclothymic disorder, mild-to-moderate, and probably symptom amplification, with a GAF of approximately 60. In the body of the report, the examiners opined Plaintiff's ability to maintain persistence and concentration on tasks for a full workday and workweek is moderately impaired and her social relationships are moderately impaired (Tr. 780-788). In the attached assessment form, the examiner opined Plaintiff is moderately limited in her ability to interact appropriately with the public, but still able to function satisfactorily. Plaintiff's ability to respond appropriately to work pressures in a usual work setting was noted to fall in between slightly limited and moderately limited, with slight limitation noted in the areas of interact appropriately with supervisors and coworkers and respond appropriately to changes in a routine work setting (Tr. 789-

6

791).

        Plaintiff continued treatment at Appalachian Medical Center from February 14, 2006 through May 10, 2007. The handwritten notes are partially illegible, but do reflect treatment for COPD, hypertension, osteoarthritis, degenerative disc disease, low back pain, anxiety, palpitations, bipolar disorder, psychotic disorder, tachycardia, diarrhea, migraine headaches, facial numbness, depression, tremors, diabetes mellitus, and chronic bronchitis (Tr. 792-823).

        On May 17, 2007, Sandra Morgan opined Plaintiff has no useful ability (poor) to relate to coworkers; deal with the public; deal with work stresses; maintain attention and concentration; behave in an emotionally stable manner; or relate predictably in social situations. Plaintiff's ability to function was noted to be seriously limited (fair) in the areas of follow work rules; use judgment with the public; interact with supervisors; function independently; understand, remember, and carry out job instructions; maintain personal appearance; and demonstrate reliability (Tr. 824-826).

[Doc. 13, pgs. 2-11].

The plaintiff was 31 years of age, a "younger" individual. She had past relevant work experience as a cashier, which was semi-skilled and required medium exertion; as an office manager, which was skilled and required light exertion; and as a telemarketer, which was semi-skilled and required sedentary exertion.

At the administrative hearing, the ALJ called Cathy Sanders, a Vocational Expert ["VE"]. The ALJ asked her to assume that the plaintiff could perform medium exertion but had the limitations set forth in Exhibit 32F(Tr. 780-91), which is the February, 2007 mental evaluation performed by Art Stair, M.A., and Dr. Charlton Stanley, Ph.D. With those limitations, the VE identified 12,000 regional and 2.5 million national light jobs and 6,000 regional and 1.5 million national medium jobs. (Tr. 928-29). If limited to the extent opined by Dr. Morgan and Nurse Reynolds (Tr. 777-79), or if the plaintiff's testimony at the hearing were fully credible, Ms. Sanders said there would be no jobs. (Tr. 930-31).

In his hearing decision, the ALJ found that the plaintiff had severe impairments of degenerative disc disease, a mild to moderate cyclothymic disorder, probable symptoms

7

amplification, and borderline personality features. (Tr. 34). He discussed the plaintiff's mental health history and the various examinations in great detail. He then concluded that the plaintiff had the residual functional capacity for medium work with the non-exertional mental limitations opined by Dr. Stanley and Mr. Stair in Exhibit 32F. He gave great weight to their evaluation. He found that the mental assessments by the State Agency personnel and Dr. Spangler were "generally consistent" with that evaluation. He explained his rejection of Dr. Morgan and Mr. Reynolds, stating that (1) they were based mainly on the plaintiff's subjective complaints and not the objective findings, and (2) because they were mainly "general medical providers" and not experts in mental health issues. (Tr. 39). He discussed the plaintiff's testimony and found that she was not credible regarding the severity of her symptoms. He found that she could not return to her past relevant work. (Tr. 41). Based upon her residual functional capacity and the testimony of Ms. Sanders, he found that a substantial number of identified jobs existed which the plaintiff could perform in the regional and national economies. Accordingly, he found that she was not disabled. (Tr. 42-43).

Plaintiff asserts that the she has "mental impairments more numerous and more limiting" than those found by the ALJ and that his RFC finding and ultimate conclusion are not based upon substantial evidence. He makes no arguments regarding the ALJ's physical findings, or his determination of the plaintiff's credibility.[1]

Plaintiff's argument is almost entirely a re-recitation of the plaintiff's mental health history. There is no dispute that this history exists, and the ALJ discussed it in great detail.

---

[1] Any argument not raised in the present motion is waived henceforth in the appellate process.

However, the real issue is whether he, as finder of fact, committed reversible error in accepting the evaluation of Dr. Stanley and Mr. Stair, based upon two examinations of the plaintiff, along with the corroborating reports of Dr. Spangler and the State Agency psychologists. The plaintiff's treating sources who gave assessments, Dr. Morgan and Nurse Reynolds, were considered, and the ALJ discounted them for understandable reasons, which were that they were based largely on subjective complaints, they were seriously inconsistent with the thorough examinations of Stanley and Stair, and because Dr. Morgan and Nurse Reynolds were not entitled to the greater deference to which treating mental health professionals would have been under the Social Security regulations and case law. In the opinion of the Court, the ALJ weighed the evidence as trier of fact, and his acceptance of the opinion of Stanley and Stair was within his discretion. Their opinion provided substantial evidence for his RFC finding, the hypothetical question to the VE, and his ultimate finding that the plaintiff was not disabled.

It is therefore respectfully recommended that the plaintiff's Motion for Summary Judgment [Doc. 12] be DENIED, and the defendant Commissioner's Motion for Summary Judgment [Doc. 16] be GRANTED.[2]

Respectfully submitted:

s/ Dennis H. Inman
United States Magistrate Judge

---

[2] Any objections to this report and recommendation must be filed within fourteen (14) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).

<mark>10</mark>

<mark></mark>
<mark></mark>

<mark>Case 2:10-cv-00178-JRG-DHI   Document 18   Filed 08/24/11   Page 10 of 10   PageID #: 82</mark>

10